Mr. Bill A. Shirron, Executive Director Arkansas Teacher Retirement System 1400 W. Third Street Little Rock, AR 72201
Dear Mr. Shirron:
You have presented the following question for my opinion:
 Do the provisions of Article 19, § 13 of the Arkansas Constitution apply to interest rates charged by the Arkansas Teacher Retirement System?
You indicate that your concern regarding this issue arises out of the fact that the Arkansas Teacher Retirement System (ATRS), pursuant to its statutory duty to invest at least five percent of its investment portfolio in "Arkansas-related investments," see A.C.A. § 24-2-608, has from time to time invested in real estate loans to Arkansas individuals and business entities, secured by first mortgage liens on Arkansas real estate. It is my understanding that these are direct loans.[1]
RESPONSE
It is my opinion that the provisions of Article 19, § 13 of the Arkansas Constitution, as amended by Amendment 60 (the Arkansas usury law), do apply to the ATRS. It is my opinion further that whether the ATRS may avail itself of the exception to the usury limit is a question of fact that will turn on the nature of the loans in question. These issues will be discussed more fully below.
I will begin by setting forth the text of Article 19, § 13:
13. Maximum lawful rates of interest.
(a) General Loans:
 (i) The maximum lawful rate of interest on any contract entered into after the effective date hereof shall not exceed five percent (5%) per annum above the Federal Reserve Discount Rate at the time of the contract.
 (ii) All such contracts having a rate of interest in excess of the maximum lawful rate shall be void as to the unpaid interest. A person who has paid interest in excess of the maximum lawful rate may recover, within the time provided by law, twice the amount of interest paid. It is unlawful for any person to knowingly charge a rate of interest in excess of the maximum lawful rate in effect at the time of the contract, and any person who does so shall be subject to such punishment as may be provided by law.
 (b) Consumer Loans and Credit Sales: All contracts for consumer loans and credit sales having a greater rate of interest than seventeen percent (17%) per annum shall be void as to principal and interest and the General Assembly shall prohibit the same by law.
(c) Definitions: As used herein, the term:
 (i) "Consumer Loans and Credit Sales" means credit extended to a natural person in which the money, property, or service which is the subject of the transaction is primarily for personal, family or household purposes.
 (ii) "Federal Reserve Discount Rate" means the Federal Reserve Discount Rate on ninety-day commercial paper in effect in the Federal Reserve Bank in the Federal Reserve District in which Arkansas is located.
(d) Miscellaneous:
 (i) The rate of interest for contracts in which no rate of interest is agreed upon shall be six percent (6%) per annum.
 (ii) The provisions hereof are not intended and shall not be deemed to supersede or otherwise invalidate any provisions of federal law applicable to loans or interest rates including loans secured by residential real property.
 (iii) The provisions hereof revoke all provisions of State law which establish the maximum rate of interest chargeable in the State or which are otherwise inconsistent herewith.
Ark. Const., Art. 19, § 13, as amended by Const. Amend. 60.
By the explicit terms of the above-quoted constitutional provision, the limitation on interest rates applies to "any contract." This broad language clearly includes any contract entered into by the ATRS.
By the express terms of this provision, usury limits do not apply in situations that are preempted by federal law. Id. at § (d)(ii).
The Depository Institutions Deregulation and Monetary Control Act of 1980 (Pub.L. No. 96-221, 94 Stat. 132, 161) expressly preempts the state usury limits on certain loans secured by first mortgage liens on real estate. See 12 U.S.C. § 1735f-7a.
In order for a real estate loan to come within the above-referenced federal preemption, it must be a loan that is described in Section 527(b) of the National Housing Act [12 U.S.C. § 1735f-5(b)] (with certain exceptions not pertinent to your question). The National Housing Act's description applies to any loan that is secured by residential real estate, and that meets one of the following four requirements:
 (A) is made in whole or in part by any lender the deposits or accounts of which are insured by any agency of the Federal Government, or is made in whole or in part by any lender which is itself regulated by any agency of the Federal Government; or
 (B) is made in whole or in part, or insured, guaranteed, supplemented, or assisted in any way, by the Secretary of Housing and Urban Development or any other officer or agency of the Federal Government or under or in connection with a housing or urban development program administered by the Secretary of Housing and Urban Development or a housing or related program administered by any other such officer or agency; or
 (C) is eligible for purchase by the Federal National Mortgage Association, the Government National Mortgage Association, or the Federal Home Loan Mortgage Corporation, or from any financial institution from which it could be purchased by the Federal Home Loan Mortgage Corporation; or
 (D) is made in whole or in part by any "creditor", as defined in section 1602(f) of Title 15, who makes or invests in residential real estate loans aggregating more than $1,000,000 per year.
12 U.S.C. § 1735f-5(b).
The ATRS clearly does not fall within the first two of the above-listed alternative requirements, because it is not a federally-insured depository institution, nor are its loans made in connection with the Secretary of Housing and Urban Development or any other federal officer or agency.
The question of whether the ATRS's loans fall within the third or fourth requirements is a question of fact that will turn on the nature of its loan contracts.
In order to fall within the third requirement, the ATRS's loans must be "eligible for purchase" by the entities named in the requirement. A factual review of each contract would be necessary in order to determine whether these loans meet this requirement.
In order to meet the fourth requirement, the ATRS must constitute a "creditor," within the meaning of that requirement. To do so, the ATRS must meet the definition of "creditor" that is set forth in15 U.S.C. § 1602(f). That definition states in pertinent part:
 (f) The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.
15 U.S.C. § 1602(f).
In order to determine whether the ATRS meets the above-quoted definition, it would be necessary to review the ATRS's loan contracts and to ascertain whether, as a factual matter, the ATRS "regularly" enters into such contracts. These questions of fact will determine whether the ATRS constitutes a "creditor" for purposes of the fourth requirement.
To summarize, it is my opinion that the ATRS is clearly subject to the usury limits of Article 16, 13 of the Arkansas Constitution. However, whether the ATRS can avail itself of any preempting federal law is a question of fact that I am not in a position to determine.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
[1] You have not asked (and I will not address) the issue of whether it is appropriate under Arkansas law (Ark. Const., Art. 16, § 1) for the ATRS to make direct loans. For an analysis of this issue, see Op. Att'y Gen. No. 99-160 (opining that it is permissible under certain circumstances for the Arkansas State Highway Employees' Retirement System to make direct loans).